IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| REGINALD EDWARDS | § | |
|    TDCJ-CID #902341 | § | |
| v. | § | C.A. NO. C-08-371 |
| | § | |
| OSCAR MENDOZA, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff claims that defendants failed to protect him from an inmate assault that occurred on November 1, 2006. (D.E. 1). Defendants move for summary judgment to dismiss plaintiff's claims on the grounds they are barred by the two-year statute of limitations. (D.E. 24). Plaintiff has filed a response in opposition, arguing that limitations is tolled while he exhausts his administrative remedies. (D.E. 25). For the reasons stated herein, it is respectfully recommended that defendants' motion for summary judgment be denied.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND FACTS AND PROCEEDINGS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Divisions ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas.  He filed this lawsuit on November 19, 2008, alleging that certain McConnell Unit officers and officials failed to protect him from an inmate assault, resulting in serious injuries to his leg.  (D.E. 1).

A Spears[1] hearing was held on December 4, 2008, following which certain defendants were dismissed.  (D.E. 11).  Plaintiff's failure to protect claims against Officer Stefanie Espinoza and Officer Ony Trevino were retained, and service ordered on these defendants.  (D.E. 12).  On January 27, 2009, defendants filed their answer.  (D.E. 14).

On May 22, 2009, defendants filed the instant motion for summary judgment.  (D.E. 24).  On June 22, 2009, plaintiff filed a response in opposition, (D.E. 25), and on June 29, 2009, defendants filed a reply to plaintiff's response.  (D.E. 26).  On July 31, 2009, plaintiff filed a sur-reply.  (D.E. 28).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment to dismiss plaintiff's action as barred by limitations, defendants offer: (1) the affidavit of Candace Moore, the McConnell Unit law library supervisor, regarding TDCJ mail policies when the unit is on lockdown, (D.E. 24, Ex. A); and (2) a copy of Administrative Directive AD-03.31 titled "Procedures Relating to Unit Lockdowns." (D.E. 24, Ex. B).

In his response, plaintiff offers: (1) the affidavit of offender Rayfield Whitemon, who witnessed the November 1, 2006 assault on plaintiff by four other prisoners, (D.E. 25, Ex. A); and (2) a copy of plaintiff's Step 1 and Step 2 grievances complaining about the November 1, 2006 assault. (D.E. 25, Ex. B).

The following facts are not in dispute:

On November 1, 2006, at approximately 4:40 p.m., plaintiff was in the dayroom of 7-building, G-pod, 1 section waiting for dinner. (D.E. 25, Ex. B at 1). Defendants Espinoza and Trevino were working on G-pod that day. Id. A group of inmates from other pods entered the dayroom, and one of the inmates called plaintiff over to the 1-row window area. Id. Plaintiff went over to the inmate, who then started claiming that plaintiff owed him money. Id. Other inmates then came over, and then the accusing inmate knocked plaintiff to the floor. Id. Thereafter,

plaintiff was kicked and punched by the group of inmates, resulting in his right leg being broken.  Id.

The entire time that plaintiff was being assaulted, Officers Trevino and Espinoza watched and did not intervene to stop the assault, or to assist plaintiff.  (D.E. 25, Ex. B at 1).

On November 8, 2006, plaintiff filed a Step 1 grievance complaining about the assault and defendants' failure to stop the assault, or come to his aid.  (D.E. 25, Ex. A at 1-2).  Plaintiff requested further investigation into the matter.  Id. at 2.  In a response dated December 15, 2006, Warden Jackson rejected any complaints against defendants:

> Investigation into your complaint has been reviewed by the unit classification committee on 11/15/06 and you have been recommended for a unit transfer.  You will remain housed in transient pending a decision from state classification.  In addition, this office has revealed no sufficient evidence to support your allegations against staff.  No further action warranted.

Id.

On December 27, 2006, plaintiff filed a Step 2 grievance appealing the denial of his Step 1 grievance.  (D.E. 25, Ex. B at 3-4).  He argued that defendants were responsible for controlling all movement on and off the pods, and that their actions were reckless and negligent in allowing inmates from other pods to enter

the dayroom. Id. at 3. He further claimed that defendants should be held to a higher standard of care, and charged that they failed to carry out their duty to protect him. Id.

On January 24, 2007, plaintiff's Step 2 grievance was denied. The Region IV office related that the state classification committee had denied the recommended transfer. (D.E. 25, Ex. B at 4). In addition, the Region IV office found "no evidence of staff negligence." Id.

Plaintiff executed his original complaint on October 26, 2008. (D.E. 1, at 5). It was received by the clerk's office on November 19, 2008. Id. at 10 (copy of date-stamped envelope).

## IV. **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all

pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this

burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V. DISCUSSION

Defendants move for summary judgment to dismiss plaintiff's claims on the grounds that it was filed over two weeks past the limitations period.

Federal civil rights actions instituted in Texas, such as those brought pursuant to § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by § 16.003(a) of the Texas Civil Practice and Remedies Code. Id. "Accrual of a § 1983 claim is governed by federal law." Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001).

A cause of action accrues when the plaintiff knows, or has reason to know, of the injury which is the basis of the action. Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998) (citation omitted).

In this case, plaintiff's cause of action arose on November 1, 2006, the date on which he was assaulted. He thus had until November 1, 2008 to timely file his lawsuit.

**A.   The Date Of The Filing Of The Complaint.**

In Houston v. Lack, 487 U.S. 266 (1988), the Supreme Court established the prison "mailbox rule" and held that a pro se prisoner's complaint is deemed to be filed on the date that the prisoner submits the pleading to prison authorities to be mailed. Id. at 276; see also Spotville v. Cain, 149 F.3d 374, 376 (5th Cir. 1998) (per curiam) (a pro se prisoner's § 1983 complaint is filed as soon as the pleadings have been deposited into the prison mail system). Thus, it is the date on which plaintiff submitted his complaint to the McConnell unit authorities to be mailed that determines the filing date for purposes of limitations.

At the December 4, 2008 evidentiary hearing, plaintiff testified under oath that he signed his original complaint on October 26, 2008; however, he admitted that he did not place it in the prison mail system until sometime after November 1, 2008, "maybe November 12th, or maybe November the 8th." When asked why he

did not place his pleading in the prison mail system on October 26, 2008, plaintiff explained that the unit was on lockdown, and, because he is indigent, he did not have stamps. Id. He testified that he had to wait until the unit was off lockdown before he could go to the law library to get postage and mail his complaint. Id.

Despite plaintiff's apparent belief that he could not get postage, or mail his complaint while the unit was on lockdown, both TDCJ policy and McConnell Unit practice specifically provide that mail is not stopped while the unit is on lockdown. Candace Moore, the McConnell Unit law library supervisor, testified that, as part of her job duties, she is familiar with the policies and procedures regarding offender mail. (D.E. 24, Ex. A) (Moore Aff. at ¶ 2). She further elaborated about those polices and procedures:

> When the unit is on lockdown, offenders are still allowed to mail outgoing legal mail. The mailroom staff picks up offender mail every weekday, Monday through Friday. If an offender has a letter of legal mail in his cell that is ready to be mailed out while he is on lockdown, he will be able to put that letter in the mail. He does not have to wait until lockdown has ended to mail the letter.
>
> Offenders who are indigent can request envelopes and postage for mailing out their legal mail while on lockdown. Indigent offenders can make this request at any point during lockdown.
>
> I reviewed the mail request records and found that offender Reginald Edwards requested a large envelope on Monday, October 27, 2008. That is also the day he

9

>received the writ envelope. He would have been able to put it in the outgoing mail the next day.

Id. at ¶¶ 3-5.

Moreover, TDCJ Administrative Directive 03.31 sets forth specific procedures relating to unit lockdowns. (D.E. 24, Ex. B). Pursuant to Section III entitled "Mandatory Provisions," indigent inmates are specifically authorized to continue to request and receive indigent supplies. Id. at 5. In addition, "[c]orrespondence activities shall continue during a lockdown," and "[t]he delivery of legal, special, or media mail shall not be suspended." Id. at 6. The fact that plaintiff is indigent and the unit was on lockdown does not serve to extend limitations. Thus, it is respectfully recommended that plaintiff's complaint was filed after November 1, 2008.

**B.    The Time of The Filing Of Plaintiff's Complaint Is Tolled.**

In his summary judgment response, plaintiff argues that, because he must exhaust his prison grievance remedies before filing suit, limitations is tolled for that length of time it took to exhaust. (D.E. 25, Ex. B at 4).

Pursuant to the Prison Litigation Act of 1996 ("PLRA"), prisoners must exhaust their administrative remedies prior to bringing suit. Booth v. Churner, 532 U.S. 731, 741 (2001). The TDCJ-CID has a two-step grievance procedure available to inmates. See Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998).

Prisoners are allowed fifteen calender days to file a Step 1 grievance, and the response is due forty calender days from the receipt.  Id. (citation omitted).  The prisoner has ten days to appeal the Step 1 grievance by filing a Step 2 grievance. Id. (citation omitted).  Prison officials again have forty days from their receipt of the Step 2 grievance to respond.  Id. (citation omitted).  A prisoner must pursue the grievance process through both steps for his claim to be exhausted.  Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citation omitted).

Equitable tolling principles apply to civil rights cases filed pursuant to 42 U.S.C. § 1983.  Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002) (holding that because the PLRA requires a prisoner to exhaust his administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhausts the remedies); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999) (per curiam) (holding that the statute of limitations applicable to a civil rights complaint should be tolled while the prisoner exhausts his administrative remedies); see also Wright v. Hollingsworth, 260 F.3d 357, 359 (5th Cir. 2001) ("under PLRA exhaustion requirement, limitations on a prisoner's § 1983 claims is tolled during administrative proceedings") (citing Harris, 198 F.3d at 157-59).  Thus, the Fifth Circuit has repeatedly indicated that after the PLRA, the time spent exhausting administrative remedies tolls the statute of limitations.

In plaintiff's sur-reply, he cites Gartrell v. Gaylor, 981 F.2d 254 (5th Cir. 1993) (per curiam) to support his argument that he timely filed his complaint. (D.E. 28 at 3). He argues that the PLRA requires that inmates exhaust all administrative remedies before filing civil rights actions. (D.E. 28 at 3-4) (discussing 42 U.S.C. § 1997e(a)). The Fifth Circuit explained that "[b]ecause Gartrell could have been required to exhaust the TDCJ grievance procedures before proceeding with his action in the district court, we conclude that he has, at the very least, a colorable claim that the Texas tolling provision ... would have operated to toll the limitations period until he had exhausted those procedures." Gartrell, 981 F.2d at 258. Thus, the Gartrell court vacated the district court's judgment and remanded the action. Id. at 259.

Defendants rely upon the district court's decision after remand. (D.E. 26, at 1-2) (citing Gartrell v. Gaylor, 866 F. Supp. 325 (S.D. Tex. 1994)). Upon remand, the trial court determined that plaintiff was not entitled to equitable tolling because the "plaintiff exhausted his administrative remedies at all levels within a little over two months from the initial incident forming the basis of this action. He then waited almost two years to file this action." Gartrell, 866 F. Supp. at 330. The Fifth Circuit affirmed the district court without opinion. Gartrell v. Gaylor, 66 F.3d 322 (5th Cir. 1995) (unpublished).

Prior to the PLRA's enactment, courts were not obligated to dismiss actions in which inmates did not exhaust their administrative remedies, but could require exhaustion when they determined "that it 'would be appropriate and in the interests of justice.'" Gartrell, 981 F.2d at 258 (citation omitted). As defendants argue, plaintiff sat on his right to file this action long after he had exhausted his administrative remedies. These decisions from the Gartrell v. Gaylor action, relied on by both parties, were decided prior to enactment of the PLRA. Congress enacted the PLRA mandating exhaustion of administrative remedies in all civil actions filed by inmates. See 42 U.S.C. § 1997e(a). Since this enactment, the Fifth Circuit has determined that the statute of limitations is tolled during the time required to exhaust administrative remedies. See Clifford, 298 F.3d at 333; Wright, 260 F.3d at 359; Harris, 198 F.3d at 158.

Here, plaintiff instigated the grievance process by filing his Step 1 grievance on November 8, 2006, and it concluded on January 24, 2007, following the denial of his Step 2 grievance. Thus, the grievance system took a total of 78 days. Adding 78 days to the November 1, 2008 date extends limitations to January 18, 2009. The uncontested summary judgment evidence establishes that plaintiff filed his complaint in November 2008, well before the January 2009 deadline. Thus, it

is respectfully recommended that the statute of limitations should be tolled regarding plaintiff's complaint.

## VI.  **RECOMMENDATION**

For the foregoing reasons, it is respectfully recommended that defendants' motion for summary judgment, (D.E. 24), be denied, and that this case proceed to trial on the merits.[2]

Respectfully submitted this 14th day of August 2009.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

---

[2] Defendants concede that there is a question of fact concerning the merits of plaintiff's claims.  (D.E. 24 at 1 n.1).

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).